[Civ. No. 5176. First Appellate District, Division Two.—September 2, 1925.]

## HARRISON R. WARD, Appellant, v. E. A. PARKFORD et al., Respondents.

[1] QUIETING TITLE—ADVERSE POSSESSION—UNSATISFACTORY EVIDENCE —JUDGMENT.—In this action to quiet title to certain real property, in which plaintiff relied upon adverse possession acquired under a written instrument consisting of a certificate of sale made by the tax collector of the irrigation district in which the land in dispute was located, in view of the conflicting and unsatisfactory character of the testimony produced by plaintiff in support of his claim of user of the land for the statutory period, the trial court was entirely within its rights in rendering its judgment for defendants.

[2] ID.—ADVERSE USER—BURDEN OF PROOF.—In such action, plaintiff having relied upon adverse title acquired by his predecessor in interest, the burden was upon him to show that possession of the property by said predecessor was adverse, and that burden was not sustained.

---

(1) 2 C. J., p. 279, n. 60.   (2) 2 C. J., p. 262, n. 66, p. 276, n. 59.

APPEAL from a judgment of the Superior Court of Los Angeles County. C. P. Vicini, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

---

1. See 22 Cal. Jur. 168.
2. See 1 Cal. Jur. 636.

John F. Poole and H. E. Gleason for Appellant.

A. L. Abrahams and Paul Barksdale D'Orr for Respondents.

STURTEVANT, J.—The plaintiff commenced an action to quiet title against a large number of defendants. One of the defendants, E. A. Parksford, appeared and answered. In his answer he denied the material allegations of the plaintiff's complaint and set forth a special defense in which he pleaded certain facts which he claimed would constitute an equitable estoppel that would preclude the plaintiff from any recovery. Still later the defendant Parkford filed a cross-complaint. The plaintiff answered the cross-complaint and a trial was had in the trial court on all of the issues so made by the pleadings. The court made findings on the material allegations of the plaintiff's complaint and the answer thereto and it made findings on some of the issues presented by the other affirmative allegations made in the above-mentioned pleadings of the defendant Parkford. A judgment was entered in favor of the defendants and against the plaintiff and from that judgment the plaintiff has appealed.

In his brief the appellant contends (1) that John S. Baker, his assignor, acquired title to the property in dispute by adverse possession acquired under a written instrument consisting of a certificate of sale made by the tax collector of the irrigation district in which the land in dispute was located; (2) that there was no evidence to support the finding that a trust relation existed between the plaintiff and the defendant so that the plaintiff could acquire no title to said property adverse to that of the defendant; and (3) that the tax deed produced by the defendant was void and conveyed no title; and in this behalf he specifies six different infirmities in said deed. When the respondent's brief came in it contained a reply to the first and second point and made no reply to the third point for the reason that the appellant must recover, if at all, by reason of the strength of his own title and not by reason of a weakness in the title of his adversary. In replying to the first point made by the appellant the respondent is at some pains to show (1) that the appel-

lant's assignor never had the property inclosed by a fence for the period of five consecutive years; and (2) that the appellant's assignor never, for five consecutive years, plowed and pastured, or plowed or pastured the land in dispute. In his reply brief the appellant states that he does not contend that he or his assignor had the land inclosed with a fence in such a manner as to give the appellant's assignor or the appellant title to the land. [1] However, the appellant strenuously contends that the witness Baker testified to a set of facts showing that he held the adverse possession by plowing or pasturing the land. In this connection he cites particularly that portion of the transcript which reads as follows: "Q. And when would you say you first plowed lot 83 after you got your deed from Koontz? A. I know I plowed it in '94. Q. In 1894. And what with reference to each year thereafter and up to what time? A. Sometimes there was quite a voluntary crop and I pastured it and next year I would plow it again. Q. And that continued for how long? A. For ten or twelve years. Q. That is for ten or twelve years after 1894 you continued to either pasture the land or plow it? A. Yes, sir. . . . Q. And during all that time you claimed it as your property? A. Certainly." The passages cited by the appellant are the strongest and clearest passages supporting or tending to support his claim that we can find in the transcript. However, the few lines quoted are excerpts culled from an examination that covered approximately 125 pages of the transcript. To nearly every other question propounded to him the witness gave an evasive answer. As quoted, he claimed to have obtained his deed from the tax collector in 1893, and that commencing with 1894, for ten or twelve years he continued to either pasture the land or plow it. That would lay the foundation for the action as being from 1894 to 1904 or 1906. In reply to a direct question on the subject he testified that he plowed the land twice. He plowed it in the spring and later he plowed it in the fall of the same year. In answer to another direct question he stated that he plowed the land years before the boom in 1886. Asked if he plowed it about 1884 and 1885, he testified that it was probably 1885, he couldn't tell—he was tangled up a little about it. At no place in the testimony except as quoted above did the witness designate any cer-

tain period of time including five consecutive years when he had the land fenced, or when he plowed it or pastured it, or both. In no part of the record do we find the claim made that when the land was not fenced and the witness was pasturing the land, his stock pastured it to the exclusion of the stock of other owners. Asked if he pastured the particular lot in suit, the witness answered that he had lots adjoining. The witness gave his testimony on July 10, 1923. On that date he was asked if in a conversation between himself, Mr. Parkford and Mr. Abrams, in the latter's office on July 8, 1923, that is two days before, he had not made the statement that he had abandoned all claims to the land in question since 1914. His replies were numerous, but one answer that came the nearest to being responsive was as follows: "I did tell you something or say something about that I had lost my deed, that I did not think they were worth enough to administer on and under the circumstances that I did not think that I owned anything." The appellant does not call to our attention any evidence in the record which purports to make the appellant's case any stronger than the testimony quoted above. Neither party calls to our attention any testimony in the record that was given by any other witness on the subject matter which we have discussed. Under such circumstances it is apparent that the trial court, in rendering its judgment, in effect held that the witness Baker had not convinced the mind of the court. Under all of the circumstances we think that the trial court was entirely within its rights in so holding. (*Blankman* v. *Vallejo,* 15 Cal. 638, 645; *Baker* v. *Fireman's Fund Ins. Co.,* 79 Cal. 34, 41 [21 Pac. 357]; *Prewett* v. *Dyer,* 107 Cal. 154, 159 [40 Pac. 105]; *County of Sonoma* v. *Stofen,* 125 Cal. 32, 35 [57 Pac. 681]; *Brown* v. *Petersen,* 25 App. Dec. 359 [4 Ann. Cas. 980, 982].)

[2] However, the record is entirely silent as to any evidence establishing the fact that Baker's possession was adverse to the individual owning the record title or to anyone else. Baker testified that he plowed the land twice. There is no evidence that others did not plow the land many times. Baker testified that he pastured the land. There was no evidence that the record owner did not do the same thing and there is no evidence that the record owner had any knowledge of any kind or nature that Baker ever

pastured the land. Baker testified that he thought he plowed the land in 1885—eight years before he obtained a tax deed. If he followed his usual custom then he pastured the land during the intervening years between that date and 1893, the date of his deed, that is during such years as he did not plow it. Nevertheless, he did not claim these acts done prior to 1894 to be adverse. He testified to no facts showing that his conduct toward the title of the record owner was any different after the date he obtained a tax deed than it was before he obtained a tax deed. The burden of proof showing that Baker's possession was adverse rested on the appellant and the burden was not sustained. (*De Frieze* v. *Quint,* 94 Cal. 653, 663 [28 Am. St. Rep. 151, 30 Pac. 1]; *Ball* v. *Kehl,* 95 Cal. 606, 613 [30 Pac. 780]; *Jordan* v. *Beale,* 172 Cal. 226, 229 [155 Pac. 990].)

If we are correct in the propositions which we have discussed above, and we think that the record abundantly supports our conclusions, then it becomes unnecessary to discuss any other point made by the appellant or the respondent.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.